UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARY F. McNEESE as PERSONAL
REPRESENTATIVE and SPOUSE
of TINA MARIE McNEESE, deceased,

        Plaintiff,

vs.                                No. 1: 17-CV-01164

UNITED STATES OF AMERICA,

        Defendant.

## COMPLAINT FOR DAMAGES
## FOR MEDICAL NEGLIGENCE AND WRONGFUL DEATH

**COMES NOW** Mary F. McNeese as Personal Representative and spouse of Tina Marie McNeese through her attorney, John R. Polk, and complaining of Defendant, **STATES:**

### SUMMARY OF THE ACTION

**THIS MATTER** is an action for the wrongful death of Tina Marie McNeese brought by her Personal Representative and surviving spouse and caused by the medical malpractice and negligence of physicians and employees employed by the Veteran's Administration.  The Death of Tina Marie McNeese occurred at the Raymond G. Murphy Veteran's Administration Medical Center ("Hospital") in Albuquerque, New Mexico on or about December 1, 2015.  The deceased had mitral valve prolapse, a valvular heart disease that developed into a fatal infective endocarditis caused by bacteria because of the negligent failure of the Hospital medical staff to adequately diagnose and treat the deceased, resulting in her death.  The damages requested in this matter include the decedent's loss of life and loss of enjoyment of life, loss of earning capacity, pain and suffering of the decedent, and funeral and burial expenses.

## JURISDICTION AND PARTIES

1. This matter is brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680.

2. The Plaintiff delivered a timely Form 95 claim for wrongful death to the Veteran's Administration Hospital and the facility acknowledged delivery on April 3, 2017.

3. No decision was received from the United States or the Department of Veteran's Affairs in regard to the Plaintiff's claim by October 3, 2017.

4. The Plaintiff has exhausted all administrative remedies in this matter.

5. The deceased, Tina Marie McNeese, was a resident of the State of New Mexico at the time of her death.

6. Plaintiff Mary F. McNeese was at all times material herein a resident of the State of New Mexico, and is the surviving spouse and personal representative of the deceased under the laws of New Mexico.

7. The Raymond G. Murphy Veteran's Administration Medical Center ("Hospital") is a United States government medical facility located in Albuquerque, New Mexico, and any reference herein to negligence by the Hospital also includes administrators and the members of its medical staff who treated the deceased.

8. All acts material to this action occurred within the State of New Mexico.

9. Jurisdiction and venue are properly in this Court.

## FACTS COMMON TO ALL CLAIMS

The Plaintiff re-alleges the allegations and statements in the previous paragraphs herein and further states:

10. The deceased was a veteran who received outpatient treatment at the Hospital in 2015, and died as the result of the negligence of the medical staff.

11. The deceased suffered from mitral valve prolapse ("MVP"), a disease that is caused by a thickening and displacement of the heart's mitral valve, which controls the flow of blood between the left ventricle and the left atrium.

12. MVP can cause problems with blood flow in the heart, including mitral regurgitation, a condition that causes blood to leak back into the left ventricle.

13. It is well-understood in the medical community that persons with MVP are at higher risk of bacterial infection of the heart, called infective endocarditis or bacterial endocarditis, a condition that involves the growth of "vegetation" (bacterial deposits) on the mitral valve, and which can lead to death if not properly diagnosed and treated.

14. The deceased's medical records show that on April 17, 2015, Ms. McNeese presented at the Hospital emergency room complaining of "flu-like symptoms" that included depression, fever, coughing, fatigue, night sweats and unexplained weight loss, and was referred to primary care for testing in regard to a systolic heart murmur.

15. Flu-like symptoms such as fever, chills, fatigue, aching muscles and joints, night sweats, headaches, shortness of breath, a cough that won't go away and a new heart murmur or a change in an existing heart murmur are symptoms of endocarditis.

16. On April 27, 2015, the deceased presented at the Hospital primary care clinic complaining of fever, depression, coughing, night sweats, shortness of breath, and unexplained weight loss, and was given a trans-esophageal echocardiogram where the MVP condition was revealed.

17. The deceased was treated by her primary care physician, Dr. Edwin Rodriguez Segarra, and various other physicians employed by the Hospital.

18. Surgery on the mitral valve was indicated but the deceased had poor dentition, with missing teeth and several infected teeth, which was a concern because dental infections can carry the risk of infection from the surgery.

19. Poor dentition such as caries (cavities) and infected teeth on a person with MVP can cause bacterial infection of the heart and is an indicator of infective endocarditis, which should have alerted the medical staff at the Hospital.

20. During the course of her treatment at the Hospital in 2015, the deceased was referred by her physicians for a dental consult and dental care at the Hospital on two (2) occasions.

21. The dental referrals were denied on the basis that the deceased did not meet the Veteran's Administration criteria for dental care, although the proper criteria include "medically indicated treatment," which applied to the deceased.

22. At the April 27, 2015 appointment the physicians suspected anemia and the deceased was referred for testing for anemia and was also referred to a cardiologist for "severe symptomatic mitral regurgitation."

23. The medical records further indicate that on April 12, 2015, the deceased was seen by her primary care physician who noted that the "patient is in progress for Mitral Valve Replacement vs repair," and that she was being referred to hematology/oncology on June 11, 2015, for a consult on anemia, and that her flu symptoms from April 17 had resolved.

24. A report from a visit on May 17, 2015, indicated that she was febrile and suffering from lower back pain, which she related to moving an object, and had experienced

"intermittent fever for the past 2 months," however, no tests for bacteria that included blood cultures were ordered.

25. Two days later on May 19, 2015, the deceased called a nurse and reported symptoms of fluid in her lungs, coughing, shortness of breath and chest pains, which she mentioned as the same symptoms she had before when she was treated with antibiotics; accordingly, she was referred to the emergency department where she was treated for back pain but there was no investigation into the other symptoms..

26. On June 15, 2015, the attending cardiologist called the deceased to check on her and in her notes mentioned that cardiology was waiting on an evaluation of her unexplained anemia before scheduling her for mitral valve surgery.

27. Several of the medical records refer to the deceased's anemia of "unknown etiology."

28. The deceased's consistent symptoms and the anemia from an unknown cause should have alerted the Hospital staff because endocarditis has been known to cause anemia since the early part of the 20th Century.

29. On June 26, 2015, the deceased had an acute visit appointment at her primary care clinic showing a fever of 101.6°F, which should have alerted the staff to the possibility of infection, however, no laboratory tests that included cultures for bacteria were ordered.

30. On July 30, 2015, she was seen in primary care where her temperature was measured at 101.2, however, no laboratory tests for bacteria were ordered.

31. The accumulation of symptoms at the end of July 2015 should have alerted the Hospital's medical staff to endocarditis and they should have ordered life saving surgery.

5

32. During the months of July through October, 2015, the deceased was seen on a regular basis for testing and treatment for anemia, and the notes that period indicate that the etiology of the anemia was still not understood.

33. On November 18, 2015, during a checkup telephone call from cardiology she said she was still having chills and fever, and reported that she was having fevers of 101-102°F every day and her cough was getting worse.

34. An appointment with Dr. Susan Kellie, an infectious disease specialist, was made for November 23, 2015.

35. On November 23, 2015, the deceased was examined by Dr. Kellie and Dr. Morales, who reported that the deceased complained of chronic chills and fever with "significant night sweats," and stated that she had "noted dental caries" and MVP, which placed her at risk for "endocarditis, bacterial type."

36. The two (2) physicians also noted that the deceased had symptoms suggesting "Q fever," a type of fever caused by bacterial infection, and ordered a series of blood cultures, which revealed a streptococcus sanguinis infection, which is a type of bacteria from the mouth related to her poor dentition.

37. The deceased was hospitalized and on December 1, 2015, she suffered an intracranial hemorrhage and was transferred to UNM Hospital, where she died.

38. The Office of the Medical Investigator ("OMI") conducted an autopsy, which revealed "multiple vegetations on the anterior and posterior mitral valve leaflets of the heart." The OMI found that the cause of death was an embolic stroke because of infective endocarditis from the streptococcus sanguinis infection. A copy of the OMI summary and opinion is attached hereto.

39. As stated by the Hospital's infectious disease specialist, Dr. Susan Kellie, the deceased's symptoms and her MVP and poor dentition placed her at risk for "endocarditis, bacterial type," and a competent physician operating under the requisite standard of medical care would have ordered tests to include blood cultures in a timely manner that would have confirmed the presence of streptococcus sanguinis and infective endocarditis and would have indicated a proper course of treatment and likely saved the life of Tina Marie McNeese.

40. The deceased's primary care physicians and other physicians were aware early in their treatment of the deceased's symptoms and conditions indicating infective endocarditis but negligently failed to recognize the deceased's fever, night sweats, coughing, weight loss, anemia, malaise and fatigue as symptoms of infective endocarditis and order laboratory testing that would have revealed the condition, thereby causing her death from untreated infective endocarditis; and the Defendant is liable to the Plaintiff for the wrongful death of the deceased.

41. The deceased experienced flu-like symptoms which persisted from April 17, 2015 until her death on December 1, 2015, which should have alerted the Hospital physicians that endocarditis was a possible cause.

42. The physicians had the common symptoms of infective endocarditis staring them in their faces while treating Tina Marie McNeese but none of them made the diagnosis that would have saved her life.

43. Had the physicians at the Hospital used the proper standards of medical care they would have recognized that the symptoms, including the unexplained anemia, indicated

infective endocarditis and referred her to an infectious disease specialist and most likely saved the life of Ms. McNeese.

44. The Hospital medical staff failed to use the requisite standard of medical care in diagnosing and treating the deceased's infective endocarditis and the Defendant is liable to the Plaintiff for the wrongful death of the deceased.

45. The Hospital negligently failed to heed the requests of its staff to provide the deceased with dental care so that she could have the mitral valve surgery, and said failure caused or contributed to the conditions that caused the death of the deceased, and the Defendant is liable to the Plaintiff for the wrongful death of the deceased.

46. Dental treatment would have cleared the path to valve replacement surgery, probably in time to save her life.

47. As a direct and proximate result of the negligence of the Hospital, the deceased suffered loss of life and loss of enjoyment of life, loss of earning capacity, pain and suffering, and funeral and burial expenses.

48. Defendant United States of America is liable to the Plaintiff for the damages of the deceased.

## COUNT 1
## NEGLIGENCE - MEDICAL MALPRACTICE

The Plaintiff re-alleges the allegations and statements in the previous paragraphs herein and further states:

49. The Hospital and its employees were negligent in their medical treatment of the deceased where they failed to adhere to the proper standards of medical care and diagnose her

medical condition as described above; and where they failed to provide treatment in a timely fashion that would have likely saved her life.

50. The Hospital was negligent in failing to provide dental treatment to the deceased that would have permitted surgery to replace or repair her mitral valve and would have prevented her death.

51. The Defendant is liable for the negligent medical treatment of the deceased and for the failure to follow proper standards of medical care.

**WHEREFORE**, the Plaintiff respectfully requests the Court award such damages in an amount not to exceed $5,000,000.00 as may be found by a finder-of-fact in this matter as described below:

    a. Damages for loss of life and loss of enjoyment of life;

    b. Damages for lost earnings and loss of earning capacity;

    c. Damages for pain and suffering of the deceased before her death;

    d. Damages for funeral and burial expenses;

    e. For allowable costs of this action;

    f. For post-judgment interest where allowable;

    g. For such further relief as the Court may deem just and proper.

### COUNT II
### NEGLIGENCE

The Plaintiff re-alleges the allegations and statements in the previous paragraphs herein and further states:

52. The Hospital through its employees was negligent in failing to provide dental treatment to the deceased that would have permitted surgery to replace or repair her mitral valve and would have prevented her death

53. The Defendant is liable to the Plaintiff for the Hospital's failure to provide dental treatment to the deceased that would likely have saved her life.

**WHEREFORE**, the Plaintiff respectfully requests the Court award such damages not to exceed $5,000,000.00 as may be found by a finder-of-fact in this matter as described below:

a. Damages for loss of life and loss of enjoyment of life;

b. Damages for lost earnings and loss of earning capacity;

c. Damages for pain and suffering of the deceased before her death;

d. Damages for funeral and burial expenses;

e. For allowable costs of this action;

f. For post-judgment interest where allowable;

g. For such further relief as the Court may deem just and proper.

Respectfully Submitted,

*/S/ John R. Polk*
John R. Polk
Attorney for Plaintiff
4801 Lang Ave. NE Suite 110
Albuquerque, NM 87109
(505) 321-2851