# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

MARY F. McNEESE,

    Plaintiff,

v.                                                            Civ. No. 17-1164 KWR/KK

UNITED STATES OF AMERICA,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## REGARDING PLAINTIFF'S MOTION TO REOPEN DISCOVERY

THIS MATTER is before the Court on Plaintiff's Motion for an Amended Scheduling Order Reopening Discovery or to Clarify Order Vacating Deadlines (Doc. 54) ("Motion"), filed October 29, 2019. Plaintiff also filed a Memorandum of Law in support of the Motion on the same date. (Doc. 55.) Defendant filed a response in opposition to the Motion on November 22, 2019, (Doc. 58), and Plaintiff filed a reply in support of it on December 2, 2019. (Doc. 61.) The Court held a hearing on December 16, 2019, at which it granted Plaintiff leave to supplement the Motion by December 31, 2019. (Doc. 64.) Accordingly, on December 30, 2019, Plaintiff filed her Supplement to Motion for an Amended Scheduling Order Reopening Discovery or to Clarify Order Vacating Deadlines ("Supplement"). (Doc. 66.) Finally, Defendant filed a response in opposition to the Supplement on January 13, 2020. (Doc. 69). Having reviewed the parties' submissions, the record, and the relevant law, and being otherwise fully advised, the Court FINDS that Plaintiff's Motion is well-taken in part and should be GRANTED IN PART and DENIED IN PART as set forth below.

                **I.**         **Factual Background**

This case involves the alleged wrongful death of Tina Marie McNeese ("the decedent"), the spouse of Plaintiff Mary McNeese, in December 2015. (*See* Doc. 1.) On March 31, 2015, the decedent consulted Ernesto Moran, D.D.S., at NUCLEO Odontologia Avanzada in Juarez, Mexico. (Doc. 54 at ¶ 11; Doc. 54-5.) Dr. Moran took an x-ray of the decedent's teeth and recommended a treatment plan comprised of a root canal, a porcelain crown, five implants, a pontic, and a three-unit fixed bridge at a total cost of nearly ten thousand dollars. (Doc. 54-5 at 1, 4.) However, the decedent never received the treatment Dr. Moran recommended. (Doc. 58-1 at 2.)

On April 17, 2015, the decedent, a veteran, sought care at the Raymond G. Murphy Department of Veterans Affairs Medical Center ("VA Hospital") emergency room in Albuquerque, New Mexico, for "'flu-like symptoms' that included depression, fever, coughing, fatigue, night sweats and unexplained weight loss[.]" (Doc. 1 at ¶¶ 7, 14.) She was seen on that date by Dr. Meela Yoo. (Doc. 11 at 7.) The decedent returned to the VA Hospital for treatment of febrile and other symptoms on numerous occasions between April and November 2015, where she was seen by various other providers. (Doc. 1 at 3-6.)

On November 23, 2015, the decedent returned to the VA Hospital for "further evaluation of fever of unknown origin," where she was seen by Dr. Susan Kellie, an infectious disease specialist, and Dr. Carol Morales, an infectious disease resident. (Doc. 1 at ¶¶ 34-36; Doc. 11 at 9; Doc. 54-2 at 1.) Drs. Kellie and Morales noted that "[t]he patient has a chronic febrile syndrome going back to April of this year" and that her symptoms "could suggest Q fever[.]"[1] (Doc. 54-2 at 2.) They also noted "dental caries and [past medical history] significant for mitral regurgitation which places patient at risk for endocarditis, bacterial type." (Doc. 54-2 at 1.) They referred the decedent for a follow up appointment at the infectious disease clinic one week later and noted that

---

[1] According to Plaintiff, "Q fever" is "a type of fever caused by bacterial infection[.]" (Doc. 1 at ¶ 36.)

"[i]n view of the fact that this patient will likely need valve replacement in the future, we will request [a] medically-compelling dentistry consult once a diagnosis has been made regarding the current fever." (Doc. 54-2 at 2-3.)

At some point between November 23 and December 1, 2015, the decedent was hospitalized. (*See* Doc. 1 at ¶ 37.) While hospitalized, she suffered an intracranial hemorrhage and was transferred to the University of New Mexico Hospital, where she died on December 1, 2015. (Doc. 1 at ¶ 37.) The Office of the Medical Investigator ("OMI") performed an autopsy and noted that before her death, the decedent had positive blood cultures for "Streptococcus sanguinis (bacteria from the mouth, likely related to her dental issues)," and that "evaluations revealed a poorly functioning mitral valve (mitral valve regurgitation) due to vegetations (bacterial deposits) on the valve." (Doc. 54-3.) The OMI concluded that the decedent's "cause of death is ascribed to an embolic stroke, due to infective endocarditis, due to Streptococcus sanguinis bacteremia." (Doc. 54-3.)

Plaintiff filed her Complaint for Damages for Medical Negligence and Wrongful Death on November 27, 2017, alleging, *inter alia*, that Defendant's failure to timely diagnose and treat the decedent's bacterial infection was negligent and led to the decedent's death. (Doc. 1.) Plaintiff alleged that "[p]oor dentition such as caries (cavities) and infected teeth on a person with [mitral valve prolapse] can cause bacterial infection of the heart and is an indicator of infective endocarditis, which should have alerted the medical staff at the Hospital." (Doc. 1 at ¶ 19.) Relying on Dr. Kellie's observations that the decedent's mitral valve condition and "poor dentition placed her at risk for 'endocarditis, bacterial type,'" Plaintiff alleged that

> a competent physician operating under the requisite standard of medical care would have ordered tests to include blood cultures in a timely manner that would have confirmed the presence of streptococcus sanguinis and infective endocarditis and would have indicated a proper course of treatment and likely saved the life of Tina Marie McNeese.

(Doc. 1 at ¶ 39.) She further alleged that the physicians who treated the decedent "had the common symptoms of infective endocarditis staring them in their faces while treating [the decedent] but none of them made the diagnosis that would have saved her life." (Doc. 1 at ¶ 42.)

## II.     Procedural History

### A.  The Parties' Joint Status Report and Provisional Discovery Plan

In accordance with Federal Rule of Civil Procedure 26(f) and the Court's Initial Scheduling Order (Doc. 9), the parties filed a Joint Status Report and Provisional Discovery Plan ("JSR") on April 25, 2018. (Doc. 11.) In the JSR, Plaintiff identified four witnesses she intended to call or depose: (1) Plaintiff; (2) Plaintiff's expert witness, Dr. Ronald Liss; (3) the decedent's primary care physician, Dr. Edwin Rodriguez-Segarra; and, (4) Dr. Kellie. (*Id.* at 6-7.) Plaintiff further indicated she may call or depose "[a]ny witness called by the defense or mentioned in any document produced in discovery." (*Id.* at 7.) Defendant named twenty-two possible witnesses and indicated that it had not yet identified an expert but intended to do. (*Id.* at 7-11.) The parties jointly proposed a discovery termination date of November 5, 2018. (*Id.* at 13.)

### B.  Discovery Extensions

On May 8, 2018, the Court entered an Order Adopting Joint Status Report and Provisional Discovery Plan with Changes and Setting Case Management Deadlines ("Scheduling Order"). (Doc. 17.) The Scheduling Order set a 180-day discovery track with discovery set to terminate on November 5, 2018. (*Id.* at 2.)

On September 17, 2018, however, the parties filed a Joint Motion for Extension of Pretrial Dead[]lines, seeking to extend discovery through December 20, 2018. (Doc. 20 at 1-2.) As grounds therefor, the parties stated that "[d]iscovery has been proceeding in this case and the parties are cooperating in the discovery process. This extension will allow additional time for the taking of

expert depositions and treating physician witnesses in a timely fashion." (*Id.* at ¶ 1.) The Court granted this motion on September 18, 2018. (Doc. 21.)

On November 28, 2018, the parties filed a Second Joint Motion for Extension of Pretrial Dead[]lines, seeking to extend discovery through January 22, 2019. (Doc. 26 at 1-2.) As grounds therefor, the parties stated that "[d]iscovery is proceeding in this case. However, depositions are still required of experts and treating physicians." (*Id.* at ¶ 1.) They further indicated that counsel for both parties had been tending to other cases. (*Id.* at ¶¶ 2-3.) The parties stated that "[e]xtensions of time will allow counsel to finalize depositions of the treating physicians and Plaintiff's expert." (*Id.* at ¶ 5.) The Court granted this motion on November 19, 2018. (Doc. 27.)

On January 4, 2019, the Court entered an Order Staying Case due to a lapse in federal appropriations, temporarily staying the case and extending "[a]ll current pretrial deadlines . . . by the number of days that elapse between December 21, 2018 and the lifting of the temporary stay." (Doc. 30.) The temporary stay was lifted on January 30, 2019. (Doc. 32-1.)

On March 18, 2019, the parties filed a Third Joint Motion for Extension of Pretrial Dead[]lines, seeking to extend discovery through April 12, 2019. (Doc. 34 at 1-2.) As grounds therefor, the parties stated that

> [d]iscovery is proceeding in this case, but was interrupted due to the federal government shutdown . . . . The parties have completed most of the pending discovery, but now require additional time to conduct the depositions of the Plaintiff, an expert and two treating physicians.

(*Id.* at ¶¶ 1, 3.) Noting that a bench trial was "set for June 3, 2019 on a trailing calendar[,]" the parties indicated that they intended to "file a separate motion to continue the trial date," and that the requested extensions of time would "allow counsel to finalize the remaining depositions and prepare this matter for trial." (*Id.* at ¶¶ 4-5.) On March 15, 2019, the Court extended discovery through April 12, 2019 as requested. (Doc. 37.)

The case was reassigned from Judge James A. Parker to Judge Martha Vázquez as the trial judge on April 2, 2019. (Doc. 40.) On April 15, 2019, Judge Vázquez entered an Order Cancelling Deadlines which specified that the "Pre-Trial Conference, Call of the Calendar and Bench Trial dates previously imposed by Judge James A. Parker are hereby VACATED." (Doc. 41.) On January 6, 2020, the case was reassigned to Judge Kea W. Riggs as the trial judge. (Doc. 68.) To date, trial has not yet been rescheduled.

### C. Discovery Obtained and Disclosed

According to the pleadings, the parties have deposed eight witnesses in this matter: (1) Plaintiff; (2) Plaintiff's expert, Dr. Liss; (3) Defendant's expert, Dr. Neal Shadoff; (4) four VA Hospital physicians who treated the decedent; and, (5) a Dr. Vadhani, whose role in this case is unclear. (*See* Doc. 11 at 6-11; Doc. 60; Doc. 61-1 at 1; Doc. 66 at 2; Doc. 66-2.) It is undisputed that Dr. Shadoff was not deposed until July 12, 2019, three months after discovery terminated.

In addition to depositions, discovery relevant to the instant Motion includes: (1) Plaintiff's disclosure to Defendant, in October 2018, of "copies of the estimates for dental care prepared in Mexico," (Doc. 58-1; *see also* Doc. 54-5 at 1; Doc. 69 at 4); (2) Defendant's disclosure of Dr. Shadoff's expert report to Plaintiff on November 5, 2018, (Doc. 24; *see* Doc. 61-1); (3) Defendant's supplementation of Dr. Shadoff's report on April 19, 2019, (Doc. 60); and, (4) Plaintiff's disclosure of Dr. Moran's March 2015 x-ray of the decedent's teeth to Defendant in October 2019. (Doc. 66 at 3.)

### III. Plaintiff's Motion to Reopen Discovery

Plaintiff filed the instant Motion on October 29, 2019, some six months after discovery closed. (Doc. 54.) In her Motion, Plaintiff asks the Court to clarify whether Judge Vázquez's April 15, 2019 Order Cancelling Deadlines vacated the discovery and motions deadlines in the

6

case.² (*Id.* at 1-2.) In the alternative, Plaintiff asks the Court to reopen the discovery and motions deadlines

> to permit the Plaintiff to include the deceased's dental records in her exhibit list and to take the deposition of Dr. Moran if that is possible, or if not, to retain a local dentist who has examined the X-Rays to testify as an expert on the condition of the deceased's teeth in March of 2015.

(*Id.* at ¶ 12.) Plaintiff adds that the testimony of Defendant's expert witness, Dr. Shadoff, "may also require the Plaintiff to retain an expert cardiologist." (*Id.* at ¶ 13.)

Plaintiff argues that the need for this discovery arose only after she deposed Dr. Shadoff because she "had no indication that the Defendant was going to deny that [the decedent] had bad teeth" until that time. (Doc. 55 at 2.) Specifically, according to Plaintiff, Dr. Shadoff indicated for the first time at his deposition that "he could find no mention in the medical records that the VA physicians observed cavities in the teeth of the deceased until Dr. Susan Kellie recommended a dental consult for her." (Doc. 54 at ¶ 6.) Plaintiff contends that Dr. Shadoff

> testified as to his theory that because there was no mention about the decedent's bad teeth in the VA medical records from early 2015 until November 2015, the lack of such a record proves that she did not have bad teeth in early 2015 . . . because the examining physicians would have mentioned the bad teeth if they existed.

(Doc. 55 at 2.) Plaintiff explains that she "would like the opportunity to test [Dr. Shadoff's] confidence [in the infallibility of his fellow physicians] by presenting hard facts of tooth decay in the deceased's mouth." (*Id.*)

In her Supplement, Plaintiff narrows the scope of the discovery she is seeking to a "brief" deposition of Dr. Moran regarding "his recollection of the examination of the deceased and any comments that he might make from examining the X-Rays." (Doc. 66 at 3.) Plaintiff argues that

---

² The position that Judge Vázquez vacated the discovery deadline in her April 15, 2019 Order Cancelling Deadlines is patently untenable, both because the discovery deadline had already expired by April 15, 2019, and because Judge Vázquez was perfectly clear regarding which deadlines she was vacating and made no mention of the discovery deadline. No clarification of Judge Vázquez's Order is needed, and to the extent Plaintiff still seeks such clarification, her Motion is denied.

7

> Dr. Moran will not be presenting expert testimony in this case but will testify as a treating dentist. His testimony about his evaluation of the decedent's teeth and gums on March 31, 2015, is the best evidence of the condition of the decedent's teeth just over two weeks prior to her visit to the emergency room at the VA hospital on April 16, 2015.

(Doc. 66 at 3-4.) According to Plaintiff, Dr. Moran's testimony will "refute Dr. Shadoff's claim that the decedent had no notable teeth or gum problems" when she was seen by Dr. Yoo and "the various other physicians who examined her" before November 23, 2015, and thus allow Plaintiff to "show that Dr. Yoo and the subsequent physicians were negligent in their treatment of the decedent." (Doc. 66 at 4.)

In addition to arguing that Plaintiff has failed to establish good cause to support reopening discovery, (Doc. 58 at 2-4; Doc. 69 at 2-4), Defendant challenges both the relevance and the propriety of the testimony Plaintiff seeks to elicit from Dr. Moran. (Doc. 69 at 6-8.) Regarding relevance, Defendant argues that Plaintiff fails to explain how Dr. Moran's testimony regarding the condition of the decedent's teeth in March 2015 can be linked to her medical condition and ultimate death eight months later. (*Id.* at 6-7.) Defendant additionally challenges Plaintiff's characterization of Dr. Shadoff's testimony, specifically that Dr. Shadoff "claim[ed] that [the decedent] had no notable teeth or gum problems when examined by Dr. Yoo[.]" (*Id.* at 7.) According to Defendant, Dr. Shadoff "merely testified . . . that none of the V.A. providers noted any dental issues in [the decedent's] medical chart[.]" (*Id.*) Regarding propriety, Defendant questions Plaintiff's assertion that Dr. Moran will not be presenting expert testimony and expresses a concern that "Dr. Moran's testimony will border on expert testimony if Plaintiff seeks to obtain his opinion of what the x-rays show." (*Id.* at 6-8.)

## IV. Analysis

### A. Applicable Legal Standards

Under Federal Rule of Civil Procedure 6, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "[E]xcusable neglect under Rule 6(b) is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (internal quotation marks omitted). "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395.

If the Court finds that there is excusable neglect for Plaintiff's failure to timely complete or move to extend discovery, it must then determine whether good cause exists to support modification of the Scheduling Order. *See* Fed. R. Civ. P. 16(b)(4); D.N.M.LR-Civ. 16.1. To demonstrate good cause under Rule 16, the moving party must "show that it has been diligent in attempting to meet the deadlines." *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (citation omitted).[3] In deciding whether to modify a scheduling order to reopen discovery, courts are to consider "several relevant factors," including:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Smith v. United States*, 834 F.2d 166, 170 (10th Cir. 1987). Whether to reopen discovery is a matter within the Court's discretion. *See id.*

**B. Whether Plaintiff Has Demonstrated Excusable Neglect**

---

[3] Unpublished decisions are not binding precedent in the Tenth Circuit but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

Plaintiff waited over six months after the deadline for seeking to extend discovery expired to file her Motion. (*See* Doc. 17 at 2 ("Any requests for additional discovery must be submitted to the Court by motion prior to the expiration of the discovery.")) By way of explanation, Plaintiff states that she believed the "intent" of Judge Vázquez's April 15, 2019 Order Cancelling Deadlines was to "vacate all deadlines including the April 12, 2019 discovery deadline[.]" (Doc. 54 at ¶ 3.) That belief is manifestly untenable, both because the discovery deadline had already expired by April 15, 2019, and because Judge Vázquez was perfectly clear regarding which deadlines she was vacating and made no mention of the discovery deadline. However, Plaintiff further explains that from late 2018 to mid-2019 her counsel was dealing with his wife's and his own serious medical issues, discussed in more detail below, which doubtless contributed both to counsel's neglect, and to his confusion. Moreover, the Court notes that Defendant added to the confusion by allowing its expert to be deposed three months after discovery terminated without seeking the Court's leave. Based on the peculiar and rare convergence of circumstances presented in this case, the Court reluctantly finds that Plaintiff's neglect in failing to seek a discovery extension until October 2019, is excusable.

### C. Application of the *Smith* Factors for Determining Whether There is Good Cause to Reopen Discovery

#### 1. Imminence of Trial

The previously scheduled trial in this case was vacated on April 15, 2019 and has not yet been rescheduled. (Doc. 41.) Defendant asserts that granting Plaintiff's Motion "will delay trial setting further." (Doc. 58 at 7.) Nevertheless, a trial that has not yet been set cannot be characterized as imminent. The Court therefore finds that the first *Smith* factor weighs in favor of reopening discovery.

#### 2. Whether the Request is Opposed

Defendant opposes Plaintiff's request to reopen discovery because, it argues, "Plaintiff has had plenty of time to determine her litigation strategy since this case began administratively and upon the filing of this lawsuit," and has failed to establish good cause to support her Motion. (Doc. 58.) Defendant opposes not only Plaintiff's initial Motion, but also the narrower Supplement she filed on December 30, 2019. (*See id.*; Doc. 69.) Thus, this factor weighs against reopening discovery.

**3. Whether Defendant Would Be Prejudiced**

Defendant contends that, if the Court grants Plaintiff's Motion, it "will be prejudiced because discovery would essentially be started all over to satisfy Plaintiff's requests" and that "[a] new schedule will likely result in further delay in the final disposition of this matter." (Doc. 58 at 7.) As explained below, the Court finds Defendant's assertions of prejudice to be unavailing.

Initially, the Court notes that this case has been pending for over two years and that case management deadlines have been extended several times on the parties' joint requests. According to the parties' own motions, they were diligent in conducting discovery; discovery was "proceeding"; and, both sides needed the requested extensions. (Docs. 20, 26, 34.) Further, Defendant appears to have been complicit in the *de facto* discovery extension that occurred when Plaintiff took Dr. Shadoff's deposition in July 2019, months after discovery terminated and without the Court's leave. The Court agrees that the additional discovery Plaintiff seeks in her initial Motion could result in, essentially, a whole new discovery period, and could therefore be prejudicial to Defendant. However, the Court fails to see, and Defendant has failed to explain, how the Court's allowing the narrower scope of discovery Plaintiff seeks in her Supplement, *i.e.*, Dr. Moran's brief deposition as a fact witness, would unfairly prejudice it. As such, the Court finds that this factor weighs in favor of reopening discovery for the limited purpose identified in Plaintiff's Supplement.

**4. Diligence of the Moving Party**

This factor addresses "whether the moving party was diligent in obtaining discovery within the guidelines established by the court." *Smith*, 834 F.2d at 170. Defendant argues that "Plaintiff was not diligent in seeking to locate and depose Dr. Moran or in locating expert witnesses to review her case and testify on behalf of her case." (Doc. 58 at 7.) Defendant additionally argues that Plaintiff's proffered explanations for her delay in moving to depose Dr. Moran are insufficient to weigh in favor of reopening discovery. (Doc. 69 at 4-5.) The Court disagrees.

While it is true that Plaintiff did not depose Dr. Moran during discovery, Plaintiff did timely provide Defendant with the decedent's treatment records from Dr. Moran. (*See* Doc. 58 at 5; Doc. 58-1 at 2; Doc. 66 at 2-3.) However, for reasons that are unclear, it appears that she did not receive the March 2015 x-ray image of the decedent's teeth when she initially obtained these records. (*See* Doc. 61 at 6; Doc. 66 at 3.) Also, Plaintiff contends that she tried to contact Dr. Moran's office for additional records in April and May of 2019 but received no response. (Doc. 66 at 3.) Plaintiff represents that it was not until October 12, 2019 that she was able to obtain a copy of the x-ray, which she provided to Defendant that same month. (*Id.*) Defendant does not challenge this description of events, which in the Court's view demonstrates at least some degree of diligence on Plaintiff's part in pursuing evidence from Dr. Moran.

Moreover, Defendant's contention that Plaintiff "was not diligent . . . in locating expert witnesses to review her case and testify on behalf of her case" is inaccurate. (Doc. 58 at 7.) In fact, Plaintiff timely hired Dr. Liss as an expert witness to testify that the decedent's death "was caused by the failure of the primary care physicians at the VA [Hospital] to diagnose bacterial endocarditis by ordering blood cultures[.]" (Doc. 11 at 6.) At his deposition, Dr. Liss explained that "when the teeth are in miserable condition and black at the borders, and many of the gums are red as described by other people, . . . that should be noted because . . . the most common source of infection for the

12

heart valve is from the teeth." (Doc. 54-4.) Asked about the basis for his description of the decedent's teeth, Dr. Liss explained that he was making "an educated guess" based on the fact that "she had just presented to a Mexican dentist trying to get her teeth fixed[.]" (Doc. 54-4.) The Court is satisfied that Plaintiff's engagement of Dr. Liss demonstrates some degree of diligence in obtaining discovery necessary—though perhaps, without more, insufficient—to support her theory of causation.

Finally, the Court must consider Plaintiff's counsel's explanation for any lack of diligence on his part, *i.e.*, his personal and professional circumstances from December 2018 through September 2019. Counsel, who is 79 years old, represents that his elderly wife was hospitalized for gastrointestinal bleeding several times in late 2018 and early 2019. (Doc. 66 at 1.) Then, in April 2019, she had heart surgery and has "returned to the hospital several times . . . for electrical cardioversion to treat an acute atrial fibrillation problem." (*Id.*) Counsel and his wife have no children, and counsel is his wife's "only support at home and cared for her when she fell ill." (*Id.*)

In addition, counsel himself underwent an operation for colon cancer, contracted hospital-acquired pneumonia, and suffered a mild stroke for which he had to be hospitalized, all in late May and early June of 2019. (Doc. 61 at 4; Doc. 66 at 1; *see also* Doc. 46 at ¶ 4.) Furthermore, from June through September 2019, and while still dealing with the aforementioned health issues, counsel was "engaged in extensive litigation" in a case that had been pending in state court for nearly thirteen years and finally went to trial in September 2019 after voluminous motions practice in the months leading up to trial. (Doc. 66 at 2; Doc. 66-1.) To be sure, an attorney's election to tend to impending deadlines in one case does not, on its own, excuse his failure to meet deadlines in another. *Cf. Ghamrawi v. Case & Assocs. Props. Inc.*, 116 F. App'x 206, 210 (10th Cir. 2004) (holding that the district court did not abuse its discretion by denying counsel's untimely motion to file a late response where counsel "intentionally chose to work on another litigation matter,

rather than plaintiff's response, because the other matter was close to trial"). However, under the totality of the circumstances on the record before it, the Court finds that Plaintiff has adequately explained her delay in pursuing the relief she seeks in her Motion.

In short, the Court finds that this *Smith* factor weighs in favor of reopening discovery because Plaintiff, though not perfect, demonstrated some degree of diligence in pursuing discovery within the Court's guidelines.

5. **Foreseeability of the Need for Additional Discovery**

Regarding this factor, Plaintiff argues that her need to depose Dr. Moran did not arise until Dr. Shadoff's deposition, by which time discovery had closed. (Doc. 55 at 3.) According to Plaintiff,

> [p]revious to Dr. Shadoff's deposition testimony there seemed little doubt that the decedent's teeth were in very poor condition because the Defendant's own physician, Dr. Kellie, stated that the condition of the teeth required a 'medically compelling dentistry consult.'

(Doc. 66 at 3.) Defendant counters that Plaintiff was well aware that the decedent's dental health was central to her theory of negligence from the time she filed her Complaint, and that she should have known of the need to depose Dr. Moran and/or hire a dental expert since at least October 2018, when she produced Dr. Moran's records to Defendant, and certainly no later than November 2018, when she received Dr. Shadoff's report. (Doc. 58 at 7-8; Doc. 69 at 4, 6.)

The Court agrees with Defendant that this factor weighs against reopening discovery. The decedent's dentition has been a central part of Plaintiff's case-in-chief from the very beginning of this litigation. (*See* Doc. 1; Doc. 42-1.) The record belies Plaintiff's contention that, "[u]ntil Dr. Shadoff's deposition testimony, . . . the Plaintiff was not aware of any dispute by the Defendant as to the deceased's poor dentition." (Doc. 54 at ¶ 10.) In her Complaint, Plaintiff specifically alleged:

18. Surgery on the mitral valve was indicated but the deceased had poor dentition, with missing teeth and several infected teeth, which was a concern because dental infection can carry the risk of infection from the surgery.

19. Poor dentition such as caries (cavities) and infected teeth on a person with [mitral valve prolapse] can cause bacterial infection of the heart and is an indicator of infective endocarditis, which should have alerted the medical staff at the Hospital.

20. During the course of her treatment at the Hospital in 2015, the deceased was referred by her physicians for a dental consult and dental care at the Hospital on two (2) occasions.

21. The dental referrals were denied on the basis that the deceased did not meet the [VA's] criteria for dental care, although the proper criteria include 'medically indicated treatment,' which applied to the deceased.

(Doc. 1 at ¶¶ 18-21.) Plaintiff further alleged that the streptococcus sanguinis found in her blood cultures "is a type of bacteria from the mouth related to [the decedent's] poor dentition." (*Id.* at ¶ 36.) With the exception of Plaintiff's allegation that the "dental referrals were denied on the basis that the deceased did not meet the [VA's] criteria for dental care," (*id.* at ¶ 21), Defendant denied all of these dentition-related allegations on the basis that it lacked sufficient knowledge to admit or deny them. (Doc. 7 at ¶¶ 18-21, 36.)

Based on the foregoing, the Court finds that the need for discovery related to both the factual question of the condition of the decedent's dentition and the legal question of whether her dentition was causally related to her death were foreseeable well before Plaintiff took Dr. Shadoff's deposition. This factor weighs against reopening discovery.

**6. Likelihood that Discovery Will Lead to Relevant Evidence**

Relevant evidence is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Before determining whether the additional discovery at issue is likely to lead to such evidence, the Court must clarify precisely what additional discovery it might permit

15

Plaintiff to take. In her Supplement, Plaintiff tacitly concedes that she cannot engage in the wholesale expert discovery she originally sought in her Motion. (Doc. 66 at 3-4.) Rather, as previously noted, she now proposes to limit the discovery she seeks to a "brief" deposition of Dr. Moran regarding "his recollection of the examination of the deceased and any comments that he might make from examining the X-Rays," not as an expert witness, but as a treating dentist. (*Id.*) The fact that Plaintiff's expert disclosure deadline expired in October 2018 demands this concession. (Doc. 21.) As suggested in Section IV.B.3, *supra*, the prejudice to Defendant if the Court were to reopen expert discovery would tip the balance of the *Smith* factors in favor of denying such relief.

As such, the Court emphasizes that the only discovery it will consider permitting Plaintiff to take at this time is the brief deposition of Dr. Moran as a treating dentist, and not as an expert witness. A treating physician not disclosed as an expert "may provide testimony only within the province of a lay witness" regarding his interactions with his patient. *Montoya v. Sheldon*, 286 F.R.D. 602, 619 (D.N.M. 2012) (quotation marks omitted); *cf., e.g.*, *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004) ("[E]ven treating physicians and treating nurses must be designated as experts if they are to provide expert testimony."). He "cannot express [an] opinion as to matters which are beyond the realm of common experience and which require [the] special skill and knowledge of an expert witness." *Montoya*, 286 F.R.D. at 620 (quotation marks omitted). Thus, Plaintiff would be limited to deposing Dr. Moran about his observations as a lay witness, such as the physical appearance of the decedent's teeth and gums, as opposed to his opinions regarding matters beyond the realm of common experience, such as his interpretation of the decedent's March 2015 x-ray.

Nevertheless, even this limited discovery is likely to lead to evidence that has the tendency to make a fact—to wit, whether the decedent's dentition in March 2015 was visibly poor—more

or less probable than it would be without the evidence. And that fact, in turn, is of consequence in determining this action, because Plaintiff seeks to prove, *inter alia*, that Defendant was negligent in failing to timely realize that the decedent's poor dentition was the source of the bacterial infection that ultimately caused her death. (*See* Doc. 66-2.) Indeed, Defendant concedes that the discovery Plaintiff seeks "is part of Plaintiff's theory of negligence" and offers no reasoned argument as to why it would be unlikely to lead to relevant evidence. (Doc. 58 at 8); *cf. Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2014) ("When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." (quotation marks and citation omitted)). The Court therefore finds that this factor weighs in favor of reopening discovery.

## V. Conclusion

On balance, the Court finds that the *Smith* factors weigh in favor of reopening discovery for the limited purpose of allowing Plaintiff to depose Dr. Moran briefly as a lay witness. The Court will therefore grant Plaintiff's Motion to that extent. The remainder of Plaintiff's Motion will be denied. The Court notes that Dr. Moran is located in Juarez, Mexico, while defense counsel is located in Albuquerque. The Court instructs the parties that it will not require defense counsel to travel outside of Albuquerque to attend Dr. Moran's deposition. If Dr. Moran is unable or unwilling to travel to Albuquerque to be deposed, Plaintiff's counsel should explore the possibility of deposing him remotely, for example, by Skype.

IT IS THEREFORE ORDERED that Plaintiff's Motion for an Amended Scheduling Order Reopening Discovery or to Clarify Order Vacating Deadlines (Doc. 54) is GRANTED insofar as

discovery in this matter is reopened for the limited purpose of allowing Plaintiff to depose Dr. Moran as a lay witness. Plaintiff must complete this deposition by **Thursday, March 26, 2020**. In all other respects, the Motion is DENIED.

                                       IT IS SO ORDERED.

                                       _____
                                       KIRTAN KHALSA
                                       UNITED STATES MAGISTRATE JUDGE