## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

————————————

MARY F. McNEESE, as Personal
Representative and Spouse of
TINA MARIE McNEESE, Deceased,

     Plaintiff,

v.                            No. 1:17-cv-1164-KWR-KK

UNITED STATES OF AMERICA,

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Defendant's Motion to Exclude Expert Testimony of Dr. Ronald Liss, filed on March 29, 2021. **Doc. 90**. Having reviewed the parties' submissions and the relevant law, the Court finds that Defendant's motion is well-taken in part and, therefore, is **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND

This is a wrongful death and medical negligence action. Plaintiff alleges that the negligent medical care and treatment by various medical providers at the Veterans Administration Medical Center in Albuquerque ("VAMC") resulted in the death of her spouse, Tina McNeese ("McNeese"). The Complaint states that McNeese suffered from mitral valve prolapse ("MVP"), and alleges that, despite presenting to the hospital with an "accumulation of symptoms," VAMC physicians failed to properly diagnose and timely treat her for infectious endocarditis, resulting in her death. Specifically, the Complaint alleges that the various physicians should have but failed to timely ordered blood cultures, which would have identified "streptococcus sanguinis and infective

endocarditis" leading to the proper course of treatment. The Complaint further alleges that the treating physicians should have identified McNeese's poor dentition as a potential source of "infectious bacterial endocarditis" (bacterial infection of the heart) and had they directed her to appropriate dental treatment, they could subsequently have timely performed lifesaving heart valve surgery. The Complaint alleges that in 2015, during the course of her treatment, McNeese was referred twice for dental consults or dental care but the VAMC denied the referrals because she "did not meet the Veteran's Administration criteria for dental care, although the proper criteria include 'medically indicated treatment'." *See* **Compl., ¶¶ 18-21, 24, 39, 44-47.** Plaintiff asserted claims of Negligence – Medical Malpractice (Count I) and Negligence (Count II) against VAMC.

Defendant contests Dr. Liss' qualifications as an expert witness arguing: 1) Dr. Liss should be limited to the opinions disclosed in his initial expert report; (2) his opinions within the report should be excluded as unreliable and inadmissible; or, alternatively (3) should the Court deems his testimony admissible, Dr. Liss should be limited to areas for which he is qualified, specifically, to the field of emergency medicine. On June 7, 2021, the Court held a *Daubert* hearing at which time Dr. Liss testified as to his conclusions and the basis for his "modifications" to his original expert report.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods, and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The touchstone of admissibility under Rule 702 is helpfulness to the trier of fact. *See Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991).

The gatekeeping function involves a two-step analysis. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991).

Second, the Court must determine whether the witness' opinions are reliable under the principles set forth in *Daubert* and *Kumho Tire. Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). In *Daubert*, the Supreme Court identified five factors that may or may not be pertinent in assessing reliability: (1) the theory or technique in question can be and has been tested; (2) it has been subjected to peer review and publication; (3) it has a known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community. 509 U.S. at 593–94. When assessing the reliability of a proposed expert's testimony, the Court may consider the *Daubert* factors to the extent relevant, which will depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire*, 526 U.S. at 150-51. "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho*, 526 U.S. at 139.

Rule 702 further requires that expert testimony is relevant. One aspect of relevance is that the opinions have a sufficient factual basis and a reliable application of the methodology to the facts. *Daubert*, 509 U.S. at 591. Expert witnesses may testify about ultimate issues of fact, but an expert may not state legal conclusions drawn by applying the law to the facts. *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015). Although an expert may not give an impermissible legal conclusion, an expert may give testimony that embraces an ultimate issue so long as the expert's testimony assists, rather than supplants, the jury's judgment. *Id.* (quoting *United States v. Dazey*, 403 F.3d 1147, 1171-72 (10th Cir. 2005)); *United States v. Schneider*, 704 F.3d 1287, 1293 (10th Cir. 2013) (stating that Rule 704(a) allows expert opinion on an ultimate issue so long as he explains basis for any summary opinion and does not simply tell the jury what result to reach). "Permissible testimony provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field." *Richter*, 796 F.3d at 1195.

Where an expert witness's testimony is based on his experience, the expert witness must explain how his experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *See United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009) (quoting Fed. R. Evid. 702 advisory committee's note (2000)).

The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met. *See Nacchio*, 555 F.3d at 1251. Although the Court is required to conduct a *Daubert* examination of all experts before it, it need only expressly address the specific objections before it. *United States v. Avitia-Guillen*, 680 F.3d 1253, 1259 (10th Cir. 2012) ("When a party fails to object to an expert's methodology, the district

court need not make explicit findings."), *citing United States v. Velarde,* 214 F.3d 1204, 1209 n.3 (10th Cir.2000) (noting the defendant did not challenge the doctor's "credentials, expertise, or qualifications to testify as an expert"); *Macsenti v. Becker*, 237 F.3d 1223, 1233 (10th Cir. 2001) (specific findings on the record only required on party's objection); *Goebel v. Denver & Rio Grande W. R.R. Co*., 215 F.3d 1083, 1088 n.2 (10th Cir. 2000) (when no objection is raised, district courts are not required to make "explicit on-the-record rulings" and, "we assume that the district court consistently and continually performed a trustworthiness analysis sub silentio of all evidence introduced at trial.").

## DISCUSSION

Plaintiff retained Dr. Liss as an expert specializing in emergency medicine, to opine on the appropriate standard of care and whether the VAMC emergency and primary care physicians failed to adhere to that standard in the course of treatment for McNeese. **Doc. 91 at 3;** *see also* **Doc. 86 at 16** (Pretrial Order) ("[Dr. Liss] will also give his opinion as to the condition of the decedent's teeth based upon his training and experience as a physician and in emergency medicine and the relation to the teeth and gums to the cause of death. And he will testify as to the poor communication between the decedent's primary care physicians and the specialists who diagnosed and treated her, which he will state was below the appropriate standard of care and contributed to or caused her death.").

### A.    Dr. Liss' Qualifications as an Expert

Dr. Liss has an M.D. and is a Board Certified Emergency Medicine physician. **Doc. 90-2 at 2.**  He is currently licensed to practice medicine in New Mexico and has over thirty-one years of experience in the field. **Doc. 90-1, Ex. A at 2.** According to the initial expert report, among other things, Dr. Liss "[] is a specialist in the diagnosing and referring of patients to the appropriate

medical specialists for the medical conditions of his patients…He has seen hundreds of patients in similar condition as [McNeese], and has made referrals for treatment to the appropriate medical specialists." ***Id*. at 3.** The report notes that Dr. Liss has "not published for general review," which is reflected in his CV. ***Id*.** Additionally, his CV includes that he has not actively practiced medicine since August of 2012 and has been "self-employed" as a "Consultant/Advisor" since then. **Doc. 90-2 (Ronald A. Liss, M.D. CV)**.

After reviewing relevant documents for the case[1], Dr. Liss compiled his initial report, resulting in a series of "findings" relating to the adequacy of VAMC's treatment of McNeese and his opinion as to what contributed to her death.  Without reference to any VAMC physician by name, Dr. Liss concludes the following regarding McNeese's treatment:

> A) The failure of the Albuquerque VA system in "Toto" by failing to consider the diagnosis of "infectious endocarditis" in their group differential diagnosis when seen and evaluated for multiple visits to the deceased' primary care provider (at least 6 visits), consultants (at least 3 appointments to Hemetology [sic]/Oncology) , Cardiologists ([]at least 4 visits) : with patient complaints and review of systems that included intermittent fevers, myalgias, flu-like symptoms, shortness of breath, anemia of uncertain cause, and weakness, in the setting of known mitral valve prolapse, with extremely poor dentition. This resulted in the direct and proximate cause to fail to test for infectious bacterial endocarditis by doing the indicated and necessary Blood Cultures, especially when febrile at appointments[.] This caused extensive delays in the treatment of her endocarditis, which then led to the failure to prevent her subsequent stroke and demise.

> B). The failure of the Albuquerque VA system to approve her vitally necessary dental treatment in a timely manner, even though 2 consultation requests reflected the medical necessity's [sic] of this treatment IAW the dental clinic rules, directly prevented the Thoracic Surgical team from replacing her diseased mitral valve and thence the [] elimination of her progression of her infectious bacterial endocarditis of her mitral valve.

---

[1] Dr. Liss' initial expert report does not state exactly which documents he reviewed. He prefaces his conclusions with, "The facts revealed by the medical records…", which the Court understands to indicate he at least reviewed the medical records. In his subsequent Affidavit attached to Plaintiff's Response in Opposition to the Motion to Exclude his testimony, Dr. Liss states "I have thoroughly examined the medical records in this matter and have read the depositions and statements of the physicians involved." **Doc. 91-2 at ¶ 12.** At the hearing on June 7, 2021**,** Dr. Liss confirmed that he reviewed these documents.

C). The failure of the primary care doctor and consultants to recognize the impact of the deceased's extremely severe dental health and ongoing dental infections to impact on her long-standing mitral valve prolapse allowing bacteria, transmitted by her dental infections to "seed" her heart valve to directly cause her subsequent bacterial heart valve infection. This led directly to vegetation's [sic] from the heart valve breaking loose from the heart and flowing to her brain, causing her terminal stroke.

(ii). The facts revealed by the medical records are that in the Spring of 2015, Ms. McNeese sought medical care at the Albuquerque VA hospital through the Emergency Room and, because she was eligible for VA care, through a VA primary care doctor and multiple VA consultants for intermittent fevers, flu-like symptoms, myalgias, dyspnea, and weakness in the setting of extremely poor dentition and chronic Mitral Valve Prolapse (mvp).The dental infections were sending bursts of bacteria into her bloodstream that were causing her fever spikes and anemia of chronic disease, and eventually caused bacterial vegetation's [sic] to grow on her heart valve. These vegetation's [sic] eventually caused her stroke which caused her demise, after over 8 months of being treated in and by the VA.

(iii). Plaintiff[] will submit the medical records, including enlargements of them, Additionally, large scale diagrams and models of the heart, brain, mouth and circulatory system will be shown to the jury to demonstrate the exact mechanisms of the disease processes that killed the deceased.

**Doc. 90-1, Ex. A.**

Noting that McNeese received care from physicians specializing in areas other than emergency medicine[2], such as cardiology, hematology and infectious diseases,  Defendant argues that Dr. Liss is not qualified to offer an opinion relating to the care they provided as beyond his expertise as an emergency medicine physician. **Doc. 90 at 10.** Defendant also argues that Dr. Liss is unqualified to render an opinion as to the state of McNeese's teeth because he is not a dentist and because the basis of his conclusion with respect to the condition of her teeth was solely drawn from review of a record that McNeese visited a dentist in Mexico and received a $9,000 estimate for dental work.[3] ***Id.***

---

[2] McNeese was seen by Dr. Meela Yoo, an emergency medicine physician.
[3] In his deposition, Dr. Liss testified that he did not review the X-Rays or any other documents compiled by the dental office in Mexico. **Doc. 90-5, Ex. E, 58:4-17.** At the hearing, Dr. Liss testified that he did not see any report relating to dentition but did review the Panorex (X-Ray) from the dental office in Mexico. In its Motion to Exclude Dr. Liss

In response, Plaintiff initially argues that Dr. Liss "possesses the knowledge, skill, experience, training, and education to render an opinion on the standard of care in this matter and his opinion is reliable and supported by sound medical reasoning." **Doc. 91 at 2.** Plaintiff contends that Dr. Liss' long-standing experience as an emergency medicine physician sufficiently qualifies him to opine on the standard of care at the VAMC.[4]   Plaintiff avers that Dr. Liss is "well-qualified" to opine on the standard of care provided by Dr. Yoo, McNeese's treating emergency medicine physician. **Doc. 91 at 3.**[5]   Plaintiff concedes that Dr. Liss' testimony with respect to the cardiologist, Dr Serkland is "a bit more complicated." ***Id.* at 3-4.**   Plaintiff states that "...Dr. Liss is not trained in cardiology and has insufficient qualifications to testify as to the standard of care for a cardiologist operating in her specialty," but posits that Dr. Liss can nevertheless speak to a standard of care for Dr. Serkland because the standards for recognizing bacterial infection are part of medical school training and "are the same across all of the medical specialties" and that emergency medicine requires strong diagnostic skills."[6]

Plaintiff asserts that Dr. Liss is also qualified to testify as to Dr. Rodriguez-Segarra's failure to meet the medical standards "because as Tina[] [McNeese's] primary care physician Rodriguez-Segarra was required to monitor all of her medical records and should have recognized that the pattern of symptoms indicated bacterial infection." ***Id.* at 4-5.**   Plaintiff states that the testimony

---

Testimony, prior to the hearing, Defendant nevertheless argues that even if Dr. Liss had viewed dental records, he is not qualified to render an expert opinion relating to dental care. **Doc. 90 at 10.**

[4] Plaintiff relies heavily upon the attached Affidavit of Dr. Liss, which extensively expands upon his initial report in scope and detail, while also addressing his opinion as to the standard of care by various VAMC physicians by name. **Doc. 91-2, Ex. 2**.  The Affidavit also offers detailed analysis with citation, for the first time, to medical sources.

[5] In sum, Dr. Liss opines that Dr. Yoo should have recognized the possibility of bacteremia from the symptoms presented on April 17, 2015, when McNeese was admitted to the ER, and failure to properly diagnose the condition was in breach of the appropriate standard of care. **Exhibit 2, ¶¶ 13, 14, 17.**

[6] Plaintiff cites solely to the Affidavit attached in her Response in support of these arguments and to one website article that provides a "Job Description" for an emergency medicine physician. Plaintiff states that "Dr. Liss will not give an opinion as to the standard of care regarding Dr. Serkland's treatment as a cardiologist because he is not a cardiologist, but he can testify as to her failure to diagnose bacteremia, an illness with symptoms that should be recognized by any physician who is paying attention." **Doc. 91 at 5.**

will go to the failure of these physicians to recognize that McNeese's symptoms indicated the possibility of bacterial infection posing a danger to her life because of her MVP. In support, Plaintiff cites to *Holzem v. Presbyterian Healthcare Services*, 2013-NMCA-100, ¶ 17, an action where the New Mexico Court of Appeals determined it was error to exclude an infectious disease expert's testimony relevant to the standards for an emergency medicine physician to identify and treat influenza. Noting that the expert in that case had extensive experience teaching medical students how to diagnose and treat influenza as an infectious disease specialist, not as a specialist in emergency medicine, the New Mexico Court of Appeals concluded the following:

> *The standard for diagnosing and treating influenza is not particular to emergency medicine, and cannot be construed on such a narrow basis.* Plaintiffs' influenza-related claim should be addressed by an expert who has sufficient experience in both influenza diagnosis and treatment that is pertinent to the facts of this case. *Accordingly, Dr. Palmer's lack of specialization in emergency medicine does not automatically disqualify him as an expert witness. Rather, it goes to the weight a jury could give his testimony if determined otherwise to be admissible.* The district court therefore abused its discretion by determining that Dr. Palmer was not qualified as an expert on this erroneous and arbitrary basis. (emphasis added).

Defendant's Reply notes that the Response is untimely[7], and also contends that Plaintiff fails to respond with any basis for Dr. Liss to offer his opinions beyond his medical qualifications as an emergency medicine physician. **Doc. 93 at 1.** Defendant faults Plaintiff for attaching an unsigned Affidavit to its Response with a "new set of opinions" beyond discovery deadlines imposed by the Court and claims that the Affidavit should therefore be stricken. *Id.* Defendant maintains that even if the Court accepts the untimely response and Affidavit, Dr. Liss' opinions therein are equally unreliable as beyond the scope of his expertise.

---

[7] Plaintiff filed the Response one day after the deadline imposed by the Court in its Order Setting Briefing Schedule, which required all responses to any *Daubert* motions to be filed no later than April 12, 2021 at 5:00 p.m. Under the circumstances, the Court does not find this to be adequate grounds for striking the Response.

The Court notes that at the *Daubert* hearing on June 7, 2021, Defendant stated that it did not object to Plaintiff's substitution of the unsigned documents, which Plaintiff's counsel stated were filed in error, with the appropriately signed original. Accordingly, the Court permitted Plaintiff to supplement its Response with the corrected files, thereby resolving the issue of an untimely, unsigned Response and Affidavit. The Court did not make a determination at that time with respect to the admissibility of the evidence within the Affidavit.

## Dr. Liss is Not Qualified to Opine Beyond the Scope of Emergency Medicine

Rule 702 allows expert testimony where the "witness [is] qualified as an expert by knowledge, skill, experience, training, or education" to offer such opinions. *LifeWise Master Funding,* 374 F.3d at 928. As Plaintiff concedes, Dr. Liss is unqualified to testify with respect to Dr. Serkland, the cardiologist. **Doc. 91 at 4.** The Court agrees. Plaintiff's proposition that Dr. Liss may testify as to the failure by all VAMC treating physicians to recognize that McNeese's symptoms indicated the possibility of bacterial infection because of her MVP on the basis that "The symptoms are well-known and recognition of them is not particular to any specialty" and her reliance on *Holzem* are misplaced. **Doc. 91 at 5.** Dr. Liss' CV demonstrates, and is confirmed by his deposition testimony, that he does not have any subspeciality experience beyond rotations in residency. **Doc. 90-5, Ex. E 27:3-24; 29:2-19.** Furthermore, Dr. Liss has no publications, let alone in these specialties, and unlike the expert in *Holzem*, appears to lack an extensive teaching record. Moreover, Dr. Liss does not have significant experience specific to mitral valve prolapse and bacterial infections beyond identifying the potential symptoms to either stabilize or refer patients out to specialists.[8] On this basis, the Court does not believe Dr. Liss is qualified to testify as an

---

[8] At the *Daubert* hearing, Dr. Liss testified that emergency medicine physicians are charged with identifying and diagnosing patients, stabilizing them as necessary, and, where indicated, presenting and referring patients to specialists or subspecialists for further medical treatment.

expert about the appropriate standard of care for and the course of treatment by physicians in non-emergency medicine specialties. Accordingly, the Court will limit Dr. Liss to testimony within emergency medicine. The Court will permit Dr. Liss to opine on the appropriate standard of care and general methods of identifying symptoms of bacterial infection as an emergency physician only.[9]

### B.      Reliability of Dr. Liss' Opinions

Defendant asserts that Dr. Liss' opinions are unreliable because "Dr. Liss offers only conclusions, without any connection to his experience, education, or field of expertise. Nor does he provide any explanation or authority for his conclusions as related to the specific facts of this case." **Doc. 90 at 11.** Defendant argues that Dr. Liss' conclusions fail to take into account the other medical conditions the VAMC physicians addressed when treating McNeese or the specific symptoms she presented with at the time of her various appointment. ***Id*. at 11-14.**

The Tenth Circuit has held that witnesses "relying solely or primarily on experience ... must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014), *quoting* Fed.R.Evid. 702 advisory committee's note (2000 Amendment).  The Court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. The court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). On the other hand, the *Daubert* factors are meant to be "helpful not definitive" and the trial court has significant latitude

---

[9] As discussed later in this Order, the Court will permit Dr. Liss to discuss Dr. Yoo's treatment of McNeese and whether there was a failure in her standard of care. The Court will also allow Dr. Liss to discuss the condition of McNeese's teeth inasmuch as it relates to whether an emergency medicine physician should be able to identify poor dentition as a symptom of endocarditis and the attendant risks with MVP.

in how it determines "whether or not" an expert's testimony is reliable." *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. at 151–53.

Defendant correctly points out that Dr. Liss does not provide any medical basis or authority for his conclusions in his initial report.[10] Notably, the Affidavit attached to Plaintiff's Response appears to attempt to remedy this omission by citing to the Merck Manual for basic symptoms of bacteremia. Absent the Affidavit attached to the Response, Dr. Liss' initial report does not appear to be sufficient grounds for an expert opinion that McNeese's poor dentition and the various physicians' alleged failure to examine her teeth or order blood cultures earlier caused her death. *See* Fed.R.Evid. 704(a) (testimony on an "ultimate issue" is admissible if it satisfies *Daubert*, and if it is helpful to the jury without depriving the jury of exercising its independent judgment); *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("…[T]he experts must explain precisely how they went about reaching their conclusions and point to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field…plaintiffs rely entirely on the experts' unadorned assertions that the methodology they employed comports with standard scientific procedures. We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under Daubert [v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)], that's not enough."); *See also Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) ("an expert who supplies nothing but a bottom line supplies nothing of value to the judicial process...).

---

[10] For example, in his initial report, Dr. Liss states that "dental infections were sending bursts of bacteria into her bloodstream that were causing her fever spikes and anemia of chronic disease, and eventually caused bacterial vegetations to grow on her heart valve [which] eventually caused her stroke which caused her demise..." He cites nothing other than a review of the medical records.

**The Court will Permit Plaintiff to Supplement the Initial Expert Report with the Affidavit Solely as it Relates to Dr. Yoo's Treatment and the Standard of Care in Emergency Medicine**.

Defendant contends that, should the Court admit Dr. Liss' testimony, he should be cabined to his disclosures in the Pre Trial Order, and that Plaintiff's failure to timely supplement his initial report with the Affidavit violates Federal Rule of Civil Procedure 26(e) and should be penalized pursuant to Federal Rule of Civil Procedure 37(c)(1). Defendant protests against the admissibility of the Affidavit because Dr. Liss' "augmented" opinions are not based on any new evidence previously unavailable to the parties. **Doc. 93 at 4.**

**The Law Relating to Disclosures and Supplementation under FRCP 26 and 37**

Federal Rule of Civil Procedure 26(a)(2)(B)(i) governs the disclosure of an expert's report and provides that the report "must contain ... a complete statement of all opinions the witness will express and the basis and reasons for them." Courts may set a time by which the parties must submit their experts' reports. Fed.R.Civ.P. 26(a)(2)(D):

> Parties bear a continuing obligation to supplement these reports if the parties later learn the information initially provided is incomplete or incorrect. Fed.R.Civ.P. 26(a)(2)(E) and 26(e). "Rule 26(a) expert reports ... are intended not only to identify the expert witness, but also 'to set forth the substance of the direct examination' ... *[and are] necessary to allow the opposing party 'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.*' " *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 953 (10th Cir.2002) (quoting Fed.R.Civ.P. 26(a)(2) advisory committee note (1993)). "[A] district court can allow evidence violating Rule 26(a) only if the violation was justified or harmless." *Id.* (citing Fed.R.Civ.P. 37(c)). *But, "[a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure.*" *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir.1999). In making this determination, the following factors guide the broad discretion of district courts: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.*

*Henderson v. Nat'l R.R. Passenger Corp.*, 412 Fed. Appx. 74, 80–81 (10th Cir. 2011).

Defendant argues that it will be prejudiced if the Court permits Dr. Liss' additional evidence in the Affidavit, beyond the scope of the original expert report. **Doc. 90 at 16; Doc. 93 at 5-7.** Defendant finds this is especially problematic "since the undersigned counsel for the United States took Dr. Liss' deposition on July 9, 2019, specifically to determine what his opinions would be at trial," and thus permitting the Affidavit's opinions would be unfair. **Doc. 93 at 6.**[11] Defendant suggests the Court strike the Affidavit, or alternatively limit or exclude Dr. Liss' testimony to his area of specialization. *Id*. **at 7.**   Plaintiff does not appear to appropriately address many of these arguments but rather makes general assertions as to Dr. Liss qualifications. Plaintiff provides no justification for the lateness of the Affidavit or explains why this information was not previously available. *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 2009 WL 3672502, at \*3-\*5 (D.N.M. Sept. 29, 2009) ("The penalty for failure to satisfy rule 26(e) is severe. Rule 37 states that, if one "fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence ... at trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). Whether a rule 26(a) violation is justified or harmless is a question for the district court's broad discretion)" (finding the party's failure to supplement in a timely fashion neither substantially justified or harmless when it was well aware of discovery deadlines, when it had all the relevant information necessary to develop the supplemental report, especially because it did not allow the opposition time to prepare a rebuttal or investigate the basis for the expert's opinions.).

---

[11] The Court previously noted that this case has a history of  mutually agreed upon extensions, discovery delays and missed deadlines. **Doc. 72 at 10.** For instance, Defendant permitted Plaintiff's counsel to take Dr. Shadoff, Defendant's expert witness', deposition on July 12, 2019, "months after discovery terminated and without leave of Court". *Id*. Thus, to the extent Defendant asserts inconvenience and delay here, the Court notes that Plaintiff is not solely at fault.

However, this determination is subject to the Court's broad discretion. *Leon v. FedEx Ground Package Sys., Inc.*, 2016 WL 1158079, at *6 (D.N.M. Mar. 1, 2016) ("District courts have broad discretion to exclude untimely disclosed expert-witness testimony."). Although non-binding, the Court finds the *Leon* District Court's analysis of *Gillum v. United States* (309 Fed. Appx. 267, 269 (10th Cir. 2009)), instructive and applicable to the instant matter:

> "… [I]n *Gillum v. United States*, the Tenth Circuit determined that a party's failure to produce a written expert report in compliance with rule 26(a)(2)(B) did not warrant the extreme sanction of excluding the expert's testimony. The district court had found that the inadequate expert report prejudiced the United States, because it could not adequately prepare for deposing the expert, and the district court determined that the prejudice could not be cured on the premise that the United States had 'only ... one chance to confront that expert, ... flat-footed, with the benefit of the homework that you can do before you take that expert deposition, and that opportunity is now gone permanently in this case.' The Tenth Circuit held that the district court 'abused its discretion in analyzing the 'cure factor,'' because the district court 'focused on the fact that the inadequate report permanently deprived the United States of the opportunity to confront [the expert] ... 'flat-footed.'' The Tenth Circuit held that this analysis was faulty, because the plaintiff had arranged for the United States to depose the expert a second time before the end of the discovery period, and the plaintiff could cover the United States' costs for a second deposition.**.** While stating that '[b]y no means do we condone the provision of inadequate expert report and begrudging snippets of information, and we caution that parties who behave in this manner act to their peril,' the Tenth Circuit held that the total exclusion of the expert's testimony was unnecessary.

*Leon v. FedEx Ground Package Sys., Inc.*, 2016 WL 1158079, at *8 (internal citations omitted).

Considering the factors advanced in *Woodworker's Supply, Inc.*, as well as the Tenth Circuit's analysis in *Gillum*, the Court concludes that the prejudice to Defendant is not so extreme as to warrant total exclusion of the evidence in the Affidavit. However, the Court agrees with Defendant that Dr. Liss should be limited to testifying within his expertise as an emergency medicine physician. As such, the Court will solely admit the Affidavit inasmuch as it discusses Dr. Yoo's treatment of McNeese in the context of emergency medicine. The Court otherwise prohibits Plaintiff from expanding upon its original report, with what is clearly a belated

supplemental report, in any other medical subject or context. *See Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003) (quoting *Resolution Trust Corp. v. Gregory,* No. CV:94–0052, (D.N.M.)) (Kelley, J.) ("Although Fed.R.Civ.P. 26(e) requires a party to 'supplement or correct' disclosure upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report…"). With respect to Plaintiff's ability to cure the prejudice, should Defendant determine that further deposition is required to address this specific aspect of Dr. Liss' Affidavit, the Court will entertain a motion on the matter of costs for obtaining added testimony. The Court does not find that inclusion of appropriately limited portions of the Affidavit would disrupt trial. Finally, the Court does not believe that Plaintiff's conduct was carried out in bad faith, although "good faith alone would not be enough to overcome the other factors." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 954 (10th Cir. 2002).

Inasmuch as Defendant argues that Dr. Liss failed to consider alternative action taken by the physicians, failed to address that the VAMC physicians conducted diagnostic testing to rule out several other potential issues, or that his opinion on what Dr. Yoo should have done is not backed by the medical literature, the Court finds this relevant to the weight of the evidence and goes to the credibility of Dr. Liss' testimony, but not the admissibility of the opinions themselves. **Doc. 93 at 10-11.** Having concluded that Dr. Liss shall be limited to his opinion with respect to Dr. Yoo, the Court does not further discuss Defendant's arguments relating to the other VAMC physicians.

The Court otherwise rejects Plaintiff's remaining arguments relating to Dr. Liss' general qualifications as applied to other specialties, which are largely absent citation to any case law.

**CONCLUSION**

For the reasons previously stated, the Court concludes that Plaintiff has not met its burden to demonstrate that Dr. Liss is qualified to testify beyond the scope of emergency medicine as to standard of care for specialties such as cardiology, infectious diseases, or primary care. The Court does find that inclusion of Dr. Liss' Affidavit and testimony relating to Dr. Yoo and emergency medicine will be helpful to the Court. Accordingly, the Court will exclude Dr. Liss' testimony and evidence involving anything other than his expertise in emergency medicine. With respect to the supplemental Affidavit, the Court will only admit, and Dr. Liss will only be permitted to opine about, the appropriate standard of care related to Dr. Yoo and her treatment of McNeese.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Exclude Expert Testimony of Dr. Ronald Liss (**Doc. 90**) is **GRANTED IN PART AND DENIED IN PART**.

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**